

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FJN:EDP/MG
F. #2009R01065/OCDETF #NY-NYE-614

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 28, 2025

<u>By Email and ECF</u>

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Vicente Carrillo Fuentes
               <u>Criminal Docket No. 09-CR-522 (JMA)</u>

Dear Judge Levy:

      For almost two decades, the defendant Vicente Carrillo Fuentes, also known as "El Viceroy" ("Carrillo Fuentes"), was the leader of the Juarez Cartel (the "Cartel"), a violent drug trafficking organization based in Chihuahua, Mexico responsible for importing and distributing hundreds of thousands of kilograms of cocaine into the United States. The defendant is scheduled to appear before this Court on February 28, 2025 for arraignment. For the reasons set forth below, no condition or combination of conditions can assure the safety of the community or the defendant's appearance at trial, and the government respectfully submits that the Court should therefore enter a permanent order of detention pursuant to 18 U.S.C. § 3142(e).

    I.    <u>Background</u>

        A.    <u>Carrillo Fuentes' Role as Leader of the Juarez Cartel</u>

      The defendant Carrillo Fuentes was one of the highest-ranking members of the Juarez Cartel in the 1990s, ultimately serving as its leader from 1997 until his capture by Mexican authorities in 2014. Under the defendant's leadership, the Cartel became an international drug trafficking and money laundering organization responsible for importing large quantities of cocaine from Colombia, through Central America and Mexico, into the United States for distribution, and for transporting drug proceeds from the United States to Mexico and Colombia.

      The Cartel controlled narcotics trafficking from Mexico into the United States via the El Paso-Ciudad Juarez corridor, which was a primary drug smuggling route along the United States-Mexico border. The Cartel received multi-ton quantities of cocaine in Mexico from the

Norte del Valle Cartel in Colombia, as well as other cocaine suppliers, and arranged for the transportation of cocaine through the El Paso-Ciudad Juarez corridor into the United States, including to New York, Texas, California, and Illinois. The Cartel's drug sales in the United States generated billions of dollars in profit, which were then laundered back to Mexico, often in vehicles containing hidden compartments and through other clandestine means.

Given the volume of cocaine transported by Carrillo Fuentes, his Cartel periodically lost ton-size loads of narcotics at a time to law enforcement intervention. As detailed in the indictment, these lost loads included the following:

- 1100 kilos of cocaine seized on September 15, 1999, from a warehouse in El Paso, Texas. (Superseding Indictment Count 1, Violation 1)

- 1923 kilos of cocaine seized on May 24, 2002, from a warehouse in Brooklyn, New York. (Superseding Indictment Count 1, Violation 2)

- 1925 kilos of cocaine seized on August 16, 2002, from a warehouse in Chicago, Illinois. (Superseding Indictment Count 1, Violation 3)

- 1997 kilos of cocaine seized on January 28, 2003, from a warehouse in Queens, New York. (Superseding Indictment Count 1, Violation 4)

- Approximately 1500 kilos of cocaine dumped at sea off the coast of Colombia on or about June 5-10, 2004, to avoid interdiction by law enforcement. (Superseding Indictment Count 1, Violation 5; Count 5)

Under Carrillo Fuentes, the Cartel maintained its power in part through the payment of bribes to law enforcement and public officials, and through numerous acts of violence. To maintain power, the defendant and the Cartel employed a veritable army of "sicarios," or hitmen, who carried out acts of violence, including murders, assaults, kidnappings, torture, and assassinations at the direction of the defendant.

For years, the defendant was also closely aligned with the Sinaloa Cartel, led by Joaquin Guzman Loera, also known as "El Chapo," and Ismael Zambada Garcia, also known as "El Mayo."[1] Throughout this partnership, the defendant and his associates corrupted public officials and taxed other drug-trafficking organizations as they asserted their control over the all-important El Paso-Ciudad Juarez corridor. When this partnership finally splintered—and the defendant and his Cartel split from the Sinaloa Cartel and realigned with the rival drug traffickers such as Zetas—all of Mexico was plunged into a decade of war and bloodshed. The defendant was at the center of this chaos, initially as the commander of Cartel's sicarios and soldiers, and then later as the leader of the entire Cartel.

---

[1] Guzman Loera was convicted at trial on February 12, 2019. United States v. Guzman Loera et al., No. 09-CR-466 (BMC). Zambada Garcia was transferred to the Eastern District of New York on September 13, 2024 and has been detained pending trial. Id.

2

B.  The Superseding Indictment

On October 2, 2019, a grand jury sitting in the Eastern District of New York returned the Superseding Indictment. Count One charges the defendant with engaging in a continuing criminal enterprise ("CCE") and being one of its principal administrators, organizers, and leaders, in violation of 21 U.S.C. §§ 848(a), 848(b) and 848(c). Count One includes six CCE predicate violations for various instances of international cocaine distribution, as well as conspiracy to murder individuals who posed a threat to the Juarez Cartel. Count One carries a statutory mandatory minimum sentence of life imprisonment, and, if the defendant is convicted, the possibility of the death penalty.

Counts Two, Three, Four, and Five charge the defendant with conspiring to import and distribute cocaine into the United States, as well as substantive cocaine distribution, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii)(II), 846, 959(a), 959(c), 960(a)(3), 960(b)(1)(B)(ii), and 963. Count Six charges the defendant with the use of firearms in furtherance of his drug trafficking crimes, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii) and 924(c)(1)(A)(iii). Count Seven charges the defendant with conspiring to launder narcotics proceeds, in violation of 18 U.S.C. §§ 1956(h). Each of Counts Two through Six carries a statutory minimum of 10 years' imprisonment and maximum of life imprisonment and a mandatory minimum of 10 years' imprisonment. Count Seven carries a statutory maximum sentence of 20 years' imprisonment.

The defendant was arrested by Mexican authorities on October 9, 2014, in the northern state of Coahuila in Mexico. A Mexican court sentenced him to 28 years in prison on September 14, 2021. The defendant was expelled by Mexico to the Eastern District of New York on February 27, 2025.

II.  Carrillo Fuentes Should be Detained Pending Trial

A.  The Bail Reform Act and Applicable Law

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., a federal court must order a defendant detained pending trial where it determines that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A presumption of dangerousness and risk of flight arises when a defendant is charged with an offense under the Controlled Substances Act or the Controlled Substances Import and Export Act that carries a maximum term of imprisonment of 10 years or more and the Court finds probable cause to believe that the defendant committed such offense. 18 U.S.C. § 3142(e)(3)(A). Probable cause may be established by the sheer fact that a grand jury has returned an indictment charging the defendant with the offense in question. See United States v. Contreras, 776 F.2d 51, 54-55 (2d Cir. 1985).

The presumption means that the Court must initially assume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3124(e)(3). The defendant may rebut this presumption by coming "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam). If

3

this burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of the evidence that the defendant presents a risk of flight. See 18 U.S.C. § 3142(f); Mercedes, 254 F.3d at 436; United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

      The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history). Indeed—and significantly—danger to the community includes "the harm to society caused by [the likelihood of continued] narcotics trafficking." United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985). In considering risk of flight, courts have found that where the evidence of guilt is strong, it provides "a considerable incentive to flee," United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993), as does the possibility of a severe sentence, see Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses with significant maximum terms had potent incentives to flee); see also United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was flight risk because her knowledge of seriousness of charges against her gave her strong incentive to abscond to Mexico).

      Courts consider several factors in making the determination of whether pretrial detention is appropriate: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, and past conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. See 18 U.S.C. § 3142(g). Even where the defendant has met his burden of production to rebut the statutory presumption in favor of detention, the presumption also remains a factor for the Court to consider. Mercedes, 254 F.3d at 436.

      B.    A Presumption of Detention Applies to the Defendant

      This case involves offenses for which there is a presumption that no combination of conditions will reasonably assure the defendant's appearance or the safety of the community. See 18 U.S.C. § 3142(e)(3). Specifically, the defendant is charged with:

- an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (18 U.S.C. § 3142(e)(3)(A)); and

- an offense under 18 U.S.C. § 924(c) (18 U.S.C. § 3142(e)(3)(B)).

As such, he is presumed to pose a danger to the community and a risk of flight. Accordingly, the defendant bears the initial burden of showing that he is not a danger to the community or a flight risk. For the reasons set forth below, the defendant cannot sustain that burden.

4

### C. Carrillo Fuentes is a Clear Danger to the Community

The facts and circumstances of this case compel the defendant's detention, as the relevant Bail Reform Act factors show that he poses a significant danger to the community.

The counts with which the defendant is charged—leading a continuing criminal enterprise, participating in an international narcotics importation and distribution conspiracy, and carrying firearms in furtherance of that conspiracy—are extremely serious. The CCE count carries a mandatory minimum sentence of life imprisonment, with the possibility of the death penalty if the defendant is convicted, while each of the other drug and firearms counts carries a 10-year mandatory minimum prison sentence. See 21 U.S.C. §§ 848(b), 841(b)(1)(A), 924(c)(1)(iii), 960(b)(1)(A), and 960(b)(1)(B)(ii). The seriousness of the charges against the defendant reflects his leadership position within an incredibly violent drug trafficking organization that routinely murdered individuals who posed a perceived threat.

During the period of the charged conduct, the defendant was one of the most senior leaders of Juarez Cartel and later assumed leadership over the entire organization. Until his capture, the defendant oversaw multi-ton shipments of cocaine and then arranged for millions in drug proceeds to be secreted back to the organization. Beyond the inherent dangerousness of his narcotics trafficking, the defendant oversaw acts of violence carried out by Cartel members, and through his direction of the Cartel, the defendant has shown a disregard for human life. The defendant has lived a life of crime and violence, and his record of ruthless criminality is extraordinary in its scope and effect. Moreover, the evidence of the defendant's guilt in leading a continuing criminal enterprise and engaging in narcotics trafficking is overwhelming. The evidence supporting the charges against the defendant includes, among other things, trial-tested evidence and witnesses, drug seizures, and testimony from numerous cooperating witnesses and law enforcement agents.

The defendant's release would pose extraordinary danger to the community given the ease with which he can continue to engage in criminal conduct by, among other things, directing Cartel members to engage in narcotics trafficking and/or violence on his behalf. See Millan, 4 F.3d at 1048 ("dangerousness" encompasses "'the danger that the defendant might engage in criminal activity to the detriment of the community'" (quoting legislative history)); Leon, 766 F.2d at 81 (dangerousness includes "the harm to society caused by [the likelihood of continued] narcotics trafficking"). That danger is particularly pronounced here given the defendant's notorious drug trafficking activities spanning nearly three decades.

In sum, no combination of conditions would be sufficient to allay the extraordinary danger the defendant poses to the community.

### D. Carrillo Fuentes Presents a Serious Risk of Flight

Similarly, the defendant cannot overcome the presumption that he is a risk of flight, for several reasons.

First, if convicted of Count One, the defendant faces a mandatory minimum sentence of life imprisonment, with the possibility of the death penalty. If convicted of any of Counts Two through Six, he faces a mandatory minimum sentence of 10 years' imprisonment

and a statutory maximum of life imprisonment.  Given the significant jail time the defendant faces upon conviction, he has a strong incentive to flee the jurisdiction.  See Jackson, 823 F.2d at 7 (prospect of severe sentence creates incentive to flee); Martir, 782 F.2d at 1147 (charges with significant maximum terms created potent incentive to flee); Cisneros, 328 F.3d at 618 (seriousness of charges gave defendant strong incentive to abscond).  Furthermore, even in the extraordinarily unlikely event that the defendant were to prevail in the instant case, he faces charges in another district in the United States.  This fact provides the defendant an even greater incentive to flee.

Second, the defendant's personal history and characteristics demonstrate that he is a significant flight risk.  The defendant has no known personal ties to the United States and has been brought to the United States for the sole purpose of facing criminal prosecution.  He has no legal status in this country.  Further, as his lifetime of notorious criminal conduct makes clear, the defendant has no respect for public authority or the rule of law.  Thus, there is no reason to believe that the defendant would obey the Court's orders or conditions of release if granted bail.  Given his absence of any connection to the United States (aside from his drug trafficking activities), his extensive ties to Mexico, and the likelihood that the defendant retains access to significant assets due to his many years of high-level drug trafficking, the defendant constitutes a significant risk of flight.

III.   Conclusion

For the foregoing reasons, the government respectfully requests that the Court order the defendant to be detained permanently pending trial, as there is no condition or combination of conditions that could reasonably assure the safety of the community or the defendant's appearance at trial if he were released.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:   /s/ Miranda Gonzalez
Erik D. Paulsen
Miranda Gonzalez
Assistant United States Attorneys
(718) 254-7000